Statement of the Case.
NICHOLLS, J.
In the petition of the plaintiff to the district court she alleged: That she was the beneficiary of a certain life insurance policy issued upon the life of Pierre J. Pavy by the Franklin Life Insurance Company of Illinois. The said policy of life insurance is numbered 35,053, is for the sum of $2,000, and, being now in the possession of petitioner as beneficiary thereof, is hereto annexed for reference only and specially referred to. It is of date July 3,. 1901. That the said Pierre J. Pavy died on the 24th of November, A. D. 1907, at his domicile in the city of Crowley, Acadia parish, La. That as appears by the said policy, on page 2 thereof, the same was “nonforfeitable” after the payment of the first three premiums. The payment of three premiums entitled the insured to demand and receive from the defendant either a cash loan of $S0, a paid-up policy for $212, or to. have the said policy automatically extended for a period of 3 years and 259 days from the date of the payment of the third premium as aforesaid.
That the insured, having made four payments under the terms of said policy, did not demand either the cash or paid-up policy, but elected to take advantage of the second provision thereof, namely, to have the same “automatically extended” for 5 years and 320 days from July 3, 1905. That, having died November 24, 1907, the policy was still in force and effect, the time limit for its expiration not having expired,- all of .which facts and circumstances are fully set out in the said policy of insurance, which is herewith filed for reference only. That due and satisfactory proof of the fact and cause of death was promptly furnished the defendant company, notwithstanding which it still refuses to pay to petitioner, the beneficiary thereunder, the amount due her thereunder, namely, the sum of $2,000.
She prayed for judgment in her favor for the sum of $2,000, with legal interest from judicial demand.
Defendant answered. It admitted that plaintiff was the beneficiary named of policy No. 35,053 for $2,000, dated the 3d day of July, 1901. It admitted that Pierre J. Pavy died on November 24, 1907. It denied that said policy was nonforfeitable after the payment of the first three premiums as alleged in the petition, and denied that it appears that said policy was nonforfeitable on page 2 thereof, or by any of the terms of said policy. Defendant denied the allegation in said petition that payment of said three premiums entitled the insured to demand and receive from the defendant either a cash loan of $80, a paid-up policy for $212, or to have said policy automatically extended for a period of 3 years and 259 days from the date of payment of the third premium, in manner and form as the same is therein alleged; but defendant admitted that it was provided by the terms of said policy that,'in case of default in the payment of premium- after three years premium had been paid in full, the company would, subject to existing indebtedness, continue the full amount of the insurance of said policy for said period, or grant a cash loan, or issue a paid-up policy in the amounts respectively above stated, and it was further provided that, if at the time of default in the payment of any premium there should be any indebtedness on account of the policy, then that the options of settlement, to wit, the loan, paid-up policy, or continued *265 Insurance values, should be correspondingly reduced; and the defendant says that at the time of default of payment of premium under said policy there was an indebtedness on account thereof as hereinafter stated, whereby the term of extended insurance was reduced to the period hereinafter mentioned.
Defendant, further answering, admitted that the insured made four payments under the terms of said policy, and-that he did not demand either cash loan or paid-up policy, but elected to take advantage of the provision thereof to have the same automatically extended for the period therein provided; but the defendant denied that the period to which the insured was entitled thereunder was 5 years and 320 days from July 3, 1905, but .stated the fact to be that said period was 1 year and 112 days from July 3, 1905. Defendant further says that the option of settlement by way of extended insurance, being the period of 5 years and 320 days, was applicable only in case there was no indebtedness on account of the policy, and that at the time of default in the payment of premiums thereunder there was an indebtedness on account thereof amounting to $70.50 for loans and interest thereon from the company to the insured, by reason whereof, and of the terms of said policy providing for reduction in the value of said option of settlement, the period of extended insurance was reduced to 1 year and 112 days as above stated, which period expired on the 23d day of October, 1906, and that the insured having died November 24, 1907, the time limit for the expiration of said insurance has long since elapsed prior to said death. The defendant denied that due or satisfactory proof of the fact and cause of death were ever furnished to it, and admitted that it refused to pay to said petitioner the said sum of $2,000, or any sum whatever.
Further answering, defendant denied all the allegations of said petition not specifically herein admitted, and denied that petitioner was- entitled to the payment prayed, or any relief whatever.
Further pleading to said petition, defendant alleged that deceased had under the terms, of said policy borrowed from the defendant the several sums under the column headed “Amount” in the account hereto attached, and marked “Exhibit A” to this answer, and made a part hereof, upon dates indicated. by said exhibit. Said amounts so borrowed bore interest from date to the time of default in premium payment at the rate of 6 per cent, per annum, and at the time of said default said loans, with accrued interest, amounted to the sum of $70.56, as was shown by said exhibit. Further answering, defendant alleged that a default in the payment of premiums under said policy occurred on the 3d day of July, A. D. 1905, the premium due on that date not being paid, and no premiums having been paid since on said policy, and therefore by the terms of said policy the same lapsed and became null and void, subject, however, to the provision of said policy for extended.insurance from the time of such lapse at the option of the insured ; but defendant averred: That it was provided in said policy that, should there be any indebtedness on account of said policy at the time of default of the payment of any premiums, the values of the several options of settlement stated in the table of surrender and loan values would be correspondingly reduced, and that the extension or continuation of insurance after default of payment, of premiums on said policy averred by the petitioner was one of the options of settlement under the “Table of Surrender and Loan Values” contained in said policy, and that the value thereof at the time of default was $92.3S. That the value and amount of *267 said loans or indebtedness of the insured at the time of such default was $70.56, and there was therefore available to the insured for the purchase of extended insurance at the time of such default the sum of $21.82, and the value of said $21.82 was given by the company in accordance with the terms of said policy in extended insurance, and the term so purchased was 1 year and 112 days as above stated.
That by reason of the foregoing facts said policy had entirely lapsed and become void long prior to the death of the insured, and petitioner is not entitled to recover thereon.
In view of the premises, defendant prayed that the demand of plaintiff be rejected and dismissed, at her cost.
Statement o£ Premium Loans, Policy No. 35,053, Pierre J. Pavy.
Date. Amount.
July 3, 1901... $15.34 Interest to July 3, 1905... $3.68
July 3, 1903... 15.34 do ... 2.76
July 3, 1903... 15.34 do ... 1.84
July 3, 1904... 15.34 do ... .92
$61.36 $9.20
Total of loans and interest to July 3, 1905.. $70.56
The district court rendered judgment in favor of the plaintiff for $2,000, subject, however, to a credit of $70.56, and the balance thereof with interest at the rate of 4 per cent, per annum from judicial demand, to wit, April 9, 1908, until paid, and costs.
The defendant appealed to the Court of Appeal.
The Court of Appeal amended the judgment appealed from by striking therefrom the credit of $70.56, and disallowed and rejected the same, and, as so amended, affirmed the judgment appealed from. The correctness of that judgment is now in this court on review.
The Court of Appeal assigned the following reasons for its judgment:
“There is no dispute about the material facts of this case. The policy sued ou was issued on July 3V 1901, to Pierre J. Pavy, aged 28 years, for $2,000, payable to the plaintiff, his mother. At the time of the issuance of the policy to the insured he paid the stipulated annual premium of $01.38, paying in cash $46.04, and by premium loan $15.34, for which last amount he executed and delivered the following certificate:
“ ‘Certificate of Premium Loan.
“ ‘$15.34. Springfield, III., July 3, 1901.
“ ‘This certifies that the Franklin Life Insurance Company, of Springfield, Illinois, has loaned on the sole security of policy No. 35,053 the sum of fifteen and 34/100 dollars, being a part of the annual premium on said policy, which with any additional premium loans, the amount to be indorsed hereon and stated also in the renewal receipt, shall be a lien on said policy until paid, simple interest at the rate of 6% per annum to be added thereto until the end of the accumulation period named in said policy, at which time the profits accruing to it shall be used towards the payment of said loan and any excess of profits paid cash or used as otherwise set forth in the policy at the option of the insured. If at that time any part of such loan shall remain unpaid. The balance may be continued as a loan, interest as aforesaid, and the dividends accruing on the policy to be thereafter payable annually, it being understood that, in the event of my death before the expiration of said accumulation period and while said policy is in force, said loan to be null and void. [Signed] P. J. Pavy, The Insured.’
“Thereafter during the continuance of the policy the insured paid, on the 3d day of July of each of the years 1902, 1903, and 1904, $46.04, of the annual premium in cash and the difference bj' a premium loan each year of $15.34, and the defendant indorsed each of said amounts ($15.34) on the back of the certificate herein-before set out. Upon said payments being made the defendant issued receipts to the insured, exhibiting that the payment of the annual premium on his policy was made as above set forth: Gash, $46.04; premium loan, $15.34; total, $61.38.
“It is admitted the insured, P. J. Pavy, died November 24, 1907. and the proof is that the plaintiff, the beneficiary under the policy, is his mother. The four annual premiums paid carried the policy in full force and vigor up to July 3, 1905, inclusive. There is no dispute about these facts. They are conceded by both sides. The controversy is over the construction of the terms of the contract. The plaintiff contends that under the terms of the policy it became nonforfeitable after the payment of the annual premiums for three years, and, the annual premiums for four years having been paid, she maintains that by the terms of the contract the life of the policy was extended for 5 years and 320 days from July 3, 1905, and said policy was consequently in full force and vigor at the time of the death of the insured. I-Ier position is that the premium loans, applied in part *269 payment to the annual premiums as hereinbefore set forth, are advanced dividends, and in no sense an indebtedness in the intendment of that word as used in the policy, to be taken into account in determining the continued insurance value of the policy from and after July 3, 1905, after which date no annual payment was paid.
“The defendant, on the other hand, maintains that while true that, if the insured had not been indebted to the defendant, the life of the policy would have been extended as claimed b” plaintiff, yet the insured was in truth and ir fact indebted to the defendant in the full sum of the premium loans, which, with interest, amounted to $70.56 on July 3, 1903, and under the terms of the contract this was such an indebtedness which entered into the equation to fix the extended insurance value of the policy; that by reason of said indebtedness and of the terms of the policy providing for the corresponding reduction in the value of the option of settlement elected by insured the period of extended insurance was reduced to 1 year 8 months and 6 days, which period expired on the 9th da^ of March, 1907, long prior to the death of the insured, and the policy was consequently lapsed and of no effect when said death occurred.
“The issue thus presented is one of the interpretation of the contract. There is no dispute between the parties about the fundamental rules of law governing on this question. It is conceded that, the contract having been prepared by the defendant, every doubtful point arising thereunder must be resolved in the sense more favorable to the insured; that it is the common intent of the parties — that is, the common intention of all — that is to be sought; that, when there is anything doubtful in agreements, we must endeavor to ascertain what was the common intention of the parties, rather than to adhere to the literal sense of the terms; that the intent must be gathered from the whole instrument.
“Guided by these cardinal principles, and bearing in mind the other rules of interpretation, we take up the consideration of the stipulations of the contract which have given rise to such divergence of opinion between the parties to this suit. The policy under review is known as an ‘Advance Dividend Limited Payment’ policy. It bears upon its face evidence of the fact that the annual premium is to be paid, at the option of the insured, part cash and part by premium loan. It provides for surrender and loan values and for nonforfeiture. It stipulates that, ‘in case of default in the payment of any premium after three years’ premiums have been paid in full, the company (subject to any existing indebtedness) will (a) without action of the insured continue, without participation, the full amount of insurance thereunder during the term specified in the following table: Provided that, if the death of the insured shall occur within one year from the date of such default, and during the continued term, the unpaid premium for said vear shall be deducted from the amount due; or (b) [then follows provision for paid-up policy, not an issue here].’
“ ‘Loans.
“ ‘(a) Upon application of the insured, the company will loan, on the sole security of this policy, twenty-five per cent, of any or all premiums hereunder as they become due; such loans to be made in accordance with the rules of the ■ompany, and to bear simple interest at six per ‘•■ent. per annum, it being understood that, if the death of the insured shall occur before the expiration of the accumulation period named in this policy, all premium loans made hereunder, and accrued interest thereon, shall be canceled and become null and void. It is also agreed that if the insured does not avail himself of any or all of the premium loans provided for in this paragraph, and his death shall occur during the accumulation period named herein, and while the policy is in full force, an amount equal to twenty-five per cent, of all premiums paid on which no loans have been made, plus simple interest at six per cent, per annum shall be added to and become payable with the original amount of this policy.’
“ ‘(c) After this policy shall have been in force three years (premiums having been duly paid to the next succeeding anniversary of insurance) the company will loan on the sole security of this policy the amount stated in the following table, loss any existing indebtedness, upon execution of blanks therefor furnished by the company; interest to be at the rate of six per cent, per annum in advance.’
“Then follows the table of surrender and loan values, setting forth for each year, from the end of the third year to the end of the twentieth year seriatim, the loan value, the term of continued insurance for $2,000, and the amount of paid-up policy for each year. The term of the continued policy at the end at the fourth year is set down in this table as 5 years and 320 days.
“Under this table appears this clause, various-1 ly interpreted by the parties, to wit: ‘Should there be any indebtedness on account of this policy at the time of default in payment of any premium, the value of the several options of settlement in the foregoing table will be correspondingly reduced.’ These are the provisions of the contract over the interpretation of which the controversy has arisen between the parties.
“The defendant company contends that the last stipulation quoted, relating to the reduction of value of the several options of settlement, is applicable to the premium loans made under paragraph ‘a,’ under the title ‘Loans,’ transcribed above; that such premium loans evidence an indebtedness to the company; that it is an indebtedness on account of the policy, and ,is a factor which must be taken into account in determining the continued insurance value of the policy.
“The plaintiff contends, on the other hand, *271 that the stipulation under review refers exclusively to any indebtedness contracted on account of the policy under paragraph ‘c’ of said title ‘Loans,’ or for ordinary insurance business, other than the premium loans provided for in paragraph ‘a.’ She contends that the premium loans are purely advanced dividends, and in no sense an indebtedness in the intendment of the word as used in the clause the subject of construction.
‘‘It appears manifest to this court that the question is not whether premium loans, because denominated ‘loans,’ are an indebtedness in any sense by the insured to the company, but whether they arc such an indebtedness which, in the common intention of the parties to the contract, was to be considered in fixing the value of the continued insurance.
“Addressing ourselves to this phase of the question, it appears evident upon a close analysis of paragraph ‘a,’ relating to premium loans, that they were intended by the parties to be advanced dividends in lieu of and against the accumulated profits which would be due to the insured during the course of the accumulative period. This is made clear by the provision ‘that if the insured does not avail himself of any or all of the premium loans provided for in this paragraph, and his death shall occur during the accumulation period named herein, and while the policy is in full force, an amount equal to twenty-five per cent, of all xxremiums paid on which no loans have been made, plus simule interest at six per cent, per annum, shall be added to and become payable with the original amount of this policy.’
“It is not provided that these premium loans should ever be paid by the insured to the company ; but, on the contrary, it is specially provided that they should remain in statu quo until the death of the insured during the accumulation period of the policy, when they all, with accrued interest, shall be canceled and become null and void. The reason of this stipulation is apparent. They were intended as advanced dividends, which would have been due under the last clause of paragraph ‘a,’ just quoted, supra. Had the insured not availed himself of these dividends under the option in the first stipulation of the paragraph, the company would have owed them to his beneficiary. Having availed himself of the option and received them during his lifetime, they become null and void at his death, and the company owes nothing to the beneficiary on account of the stipulated dividends which had already been advanced to the insured.
“The defendant trios to meet this view of the case by the argument that the provision of paragraph ‘a’ that the premium loans shall become null and void at the death of the insured is based on the condition that the annual premiums be paid and the policy kept alive; that the moment the insured defaults in the payment of any annual premium the premium loans must be viewed and treated as an indebtedness by the insured to the company, and the value of the continued insurance must be correspondingly reduced under the reduction stipulation quoted suxrra.
“A sufficient answer to this view of the case is that it is not ‘nominated in the bond.’ The provisions of paragraph ‘a,’ under discussion, negative the idea. True, the contract must be construed in its entirety, and we cannot lose sight of the reduction clause, at the foot of the table of surrender and loan values in construing paragraph ‘a’ of ‘Loans’; but we must bear in mind that the said reduction clause is general in its provisions, and paragraph ‘a’ treats of a special subject and must control in its special provisions, unless they otherwise clearly fall under the scope and grasp of the general provision. This we do not find to be the case.
“An appeal was made to the ‘Certificate of Premium Loan’ issued by the insured, transcribed in full supra, as affording evidence of a construction placed upon premium loans by the parties that such loans constituted an indebtedness to be taken into account in determining the value of continued insurance.
“We fail to axxpreciate the force of this contention. On the contrary, we think the concluding clause of that receipt is destructive of the defendant’s position. It provides: ‘It being understood that in the event of my [insured’s] death before the expiration of said accumulation period and while said policy is in force said loan is to be null and void.’
“Extended insurance surely keeps the policy in force, whether the extension is for the full period stipulated in the table of values or for the reduced period under the stipulation for reduction invoked by the defendant.
“If the premium loans were intended to be paid and retired on default made on the payment of annual premiums and utilized as an indebtedness to reduce the value of extended insurance, there would have been no need of the provision made in the concluding clause of the certificate of premium loan quoted.
“By making the application of the premium loans contended for by the defendant, they would have become extinguished, and the provision that they should become null and void at the death of the insured while the policy is in force was unnecessary. They would be already null and of no effect, because extinguished under this hypothesis, and the provision for their subsequent annulment would be mere brutum fulmen.
“Now this receipt, though signed by the insured, was evidently prepared and furnished by the defendant. It bears internal evidence of this fact. By paragraph ‘a,’ above referred to, the premium loans were to be made in ‘accordance with the rules of the company,’ and the conrpany no doubt furnished the form for the receipt. It cannot now be heard to say that the receipt does not moan what is therein' recited.
“If the premium loans remained in force until *273 the death of the insured, and became null and void on the happening of that event, then the principal thereon, with interest, was not to be applied to the reduction of the value of the extended insurance. To have so applied them would have extinguished them. The defendant could not have so applied them, and still claim to hold them in force until the death of the insured, as stipulated both in paragraph ‘a’ of the loan clause of the policy and the ‘Certificate of Premium Loan’ furnished to the insured.
“We think it is perfectly clear that the premium loans were intended by the parties as advanced dividends, and are treated as such by them, and are not such an indebtedness as is provided for by the reduction clause» of the contract to be taken into account in fixing the values of the various options of settlement provided for in the contract.
“The trial judge allowed the defendant credit for the sum of $70.56, the principal and interest of the premium loans. We think there was error in this. Viewed as advanced dividends, the premium loans were canceled and became nu'l and void at the death of the insured, as per stimulation in the contract.
“We have carefully read the able and exhaustive brief of defendant and appellant, but found it of assistance only in the solution of the only question before us — the correct interpretation of the clauses of the contract as to which the parties differed. The brief of appellee also proved of assistance on this point.
“For these reasons the judgment appealed from is hereby amended, by striking therefrom the credit of $70.56, which amount is hereby disallowed and rejected, and, as thus amended, the judgment is hereby affirmed, at the appellant’s costs.”
Opinion.
The policy to which plaintiff refers in her petition was one issued by the defendant company, whereby it promised to pay $2,000 upon receipt of satisfactory proof of the death of Pierre J. Pavy, provided the policy was then in force, to Laperle Pavy, mother of the insured; otherwise, to the insured’s executors or assigns. The insurance was granted in consideration of the application for the same, which was made a part of the contract, and of the payment of $61.38, receipt of which W9.S acknowledged, said payment being the premium for one year’s insurance, and the further payment of a like amount on or before the 3d day of July in every year thereafter until the premium for 20 years had been duly paid, or until the prior death of the insured.
The loan and surrender values, option privileges, and conditions stated in the second, third, and fourth pages of the policy were declared to form a part of the contract as fully as if recited at length over the signatures affixed to the policy. On the second page of the policy is found the heading:
“Surrender and Loan Values.”
We make from what appears thereunder the following extracts:
“Nonforfeiture.
“In case of default in the payment of any premium after three years’ premiums have been paid in full the company (subject to any existing indebtedness) will
“(a) Without action of the insured continue without participation the full amount insurance hereunder during the term specified in the following table, but if the death of the insured shall occur within one year from the date of such default and during the continued term, the unpaid premium for such year shall be deducted from the amount due; or
, “(b) Upon the surrender of the policy within sixty days_ after the date of such default issue a nonparticipatory paid-up life policy as specified in said table.
“Loans.
“(a) Upon application of the insured the company will loan on the sole security of this policy twenty-five per cent, of any or all of the premiums hereunder as they become due, such loan or loans to be made in accordance with the rules of the company and to bear simple interest at six per cent, per annum, it being understood that, if the death of the insured shall occur before the expiration of the accumulation period named in this policy, all premium loans made hereunder and accrued interest thereon shall be canceled and become null and void. It is also agreed that if the insured does not avail himself of any or all of the premium loans provided for in this paragraph, and his death shall occur during the accumulation period named herein, and while this policy is in full force, an amount equal to twenty-five per cent, of all premiums paid, on which no loans have been made, plus simple interest at six per cent, per annum, shall be added to and become payable with the original amount of this policy.
“(b) After this policy shall have been in force three years (premiums having been duly paid to the next succeeding anniversary of the insurance) the company will loan on the sole security of this policy the amount stated in the *275 following table (less any existing indebtedness) upon execution of blanks therefor furnished by the company, interest to be at the rate of six per cent, per annum in advance:

“Should there be any indebtedness on account of this policy at the time of default of payment of any premium, the value of the several options of settlement stated in the foregoing table will be correspondingly reduced.
“Distribution of Profits.
“The accumulation of this policy ends on the 3d day of July, 1921, when its share of profits will be apportioned, provided the insured is then living and all premiums have been paid in full to that date, and this policy may then be continued by the injured or assigns (subject to any existing indebtedness) under one of the following: * * *”
The plaintiff in this, suit, as the beneficiary thereof, sues in affirmance of the policy. The defendant likewise urges the enforcement of the same according to its terms. The latter claims that it terminated by limitation with no liability on its part; the former, that the death of the assured before the expiration of the term of insurance leaves the company owing her the full amount of the insurance. The plaintiff has introduced evidence to show that the contract declared on, evidenced by the policy, gives undue and unfair advantages to the insurance company and should .not be countenanced. If the contract was unfair and illegal, the remedy was to terminate it and recover the premiums paid — not to continue it in force and at the end change its terms, and so as to make it bring about what is averred would be proper and equitable ’results. This we cannot do without making a new contract for the parties, which we are not authorized to do.
As matters stand, our province is confined to construing it according to law. We are of the opinion that the Court of Appeal erred in its conclusions in that respect. When Pierre J. Pavy defaulted in paying his fifth installment of premium, the automatic extended continuance of insurance which resulted therefrom was not 5 years and 320 days, as contended by the plaintiff. That extension of insurance was for the benefit of holders of policies who had in point of fact made full payment of $G1 per year prior to making default in payments. We cannot make that term of continued insurance apply to cases where the policy holder had in fact paid only $46 of premium per year and merely promised to pay the balance of the premiums at later dates, without ignoring the words:
“Should there be any indebtedness on account of this policy at the time of default of payment of any premium, the value of the several options of settlement stated in the foregoing table will be correspondingly reduced.”
*277 We do not think the parties to the policy contemplated any other indebtedness than that touching payment of premiums. The parties to the contract had the right to look forward to the probability of a default in making payments of premiums of insurance, and to fix and declare what the result of such default in the future should be; and they did so. It was agreed that there should be a diminished term for the existence of the policy, and that it should be changed from a participating to a nonparticipating policy thereafter. There was intended to be a difference between the rights of those who had placed actually in the hands of the company the full amounts of the premiums the company demanded, and those who had only placed into the hands of the company three-fourths of the premiums for a policy of $2,-000 leaving one-fourth of the sum actually unpaid and represented in fact by premiums to be paid.
There' was in reality no payment of premiums by Pavy beyond three-fourths thereof, and in reality no loan made to him by the company. Those terms had a scope entirely different from those ordinarily attached to them, and were to be used to meet specific conditions. There was a real indebtedness by Pavy for the unpaid portion of the premiums, which remained unpaid up to the time of default. The payments and the loans acknowledged were only constructive payments and constructive loans, if we may use that expression, to be used so long as original or normal conditions existed, but should a default occur then matters were to be made to take their actual shape, and the rights of parties were to be fixed on the basis of the actual facts of the case. Policy holders, who at the time of default had not in fact paid in full in money the annual premiums, agreed that there should be an adjustment based upon actual payments which had been made in money, and the future rights and obligations fixed and determined from that standpoint. The testimony in the record going to explain the theory and plan upon which this particular character of policy was adopted by the defendant company conveys to the court knowledge and information which would be pertinent to the determination of an action of rescission or an action to recover payments of premiums as having been made in error or fraud, and as payments of money not due under article 2301 Civ. Code; but it cannot assist us in the conclusions to be reached by us under the present pleadings and issues.
This court'having accepted as correct the construction of the policy upon which ■ the actuaries acted in making their calculation of values and the period of extension, of the policy, we see no reason for questioning the correctness of the calculations themselves.
Eor the reasons assigned, the judgment of the Court of Appeal brought before us for review is hereby annulled, avoided, and reversed, and it is now ordered, adjudged, and decreed that there be judgment in favor of the defendant and against the plaintiff, and that this suit be dismissed, at her costs in both courts.