## AMICABLE LIFE INS. CO. v. WHITE.
### No. 3963.

Court of Civil Appeals of Texas. Texarkana.
April 27, 1931.

Rehearing Denied May 7, 1931.

Williams, Williams, McClellan & Lincoln, of Waco, and Ramey, Calhoun & Marsh, of Tyler, for appellant.

Butler, Price & Maynor, of Tyler, for appellee.

SELLERS, J.

Appellee, James Hogg White, sued appellant, Amicable Life Insurance Company of Waco, Tex., on a life insurance policy issued by appellant to Stella Mae White, wife of appellee. The policy which was issued June 5, 1926, designated appellee as beneficiary and promised to pay him as such the sum of $1,-000 in the event of insured's death during the continuance of the policy. The first two annual premiums on the policy were duly paid in cash; the third annual premium was not paid in cash, but was settled by a note for $35.50, being the amount of the premium. The maturity of the note was extended to June 5, 1929, and at this time the fourth annual premium also became due. Neither the note nor the premium was paid, and the policy thereupon lapsed, save as its existence was continued by the nonforfeiture provisions of the policy. Insured died October 20, 1929.

Trial was before the court without a jury, and on July 22, 1930, the court entered judgment for plaintiff awarding him the full amount sued for, being the face value of the policy, less the amount of the premium note aforesaid, plus interest, statutory damage, and attorney's fees, making an aggregate award of $1,349.23. To this judgment defendant excepted and gave notice of appeal, and had duly perfected his appeal to this court. The question presented on this appeal is simply whether or not the premium note under the provisions of this policy could be by the company charged for its payment against the reserve in the policy, and thereby reduced the amount of the reserve which would have otherwise been available for the purchase of extended insurance, as provided by the nonforfeiture provisions of the policy.

It is admitted that, if the note could not be charged against the reserve of the policy, then the amount of the reserve was sufficient to purchase extended insurance beyond the date when insured died, but, if the company could charge the note against the reserve, then the extended insurance ceased on September 30, 1929, before insured died October 20, 1929. The facts introduced upon trial of this case were undisputed. The policy involved was introduced in evidence; the portions we deem material to the disposition of this case are as follows:

"Annual Premiums of Thirty-five and 50/100 Dollars, to be paid on June 5, 1927, and of a like amount on the Fifth day of June in each year thereafter during the continuance of this Policy, or until the death of the Insured, or until premiums, including the first, shall have been paid for Twenty full years.

"Loans: After two full years' premiums have been paid, at any time while this Policy is in force, the Company will loan, upon execution of a proper loan agreement by the Insured, and on the sole security of this Policy, a sum not exceeding the amount at the end of the current contract year named in the above Table under the head of "Cash or Loan Value," at a rate of interest of six per centum per annum payable in advance. The Company may deduct from such loan value any existing indebtedness against the Policy, and may defer such loan, excepting loans made for paying premiums, for not exceeding three months after application therefor is made. Failure to repay such loan or to pay interest thereon shall not avoid this Policy until the total indebtedness thereon to the Company shall equal or exceed the loan value, as shown in the Table above. Upon endorsement on the Policy by the Company as to the existence of any loan, the Policy will be return to the Insured.

"Non-Forfeiture: In event of default of any premium payment, after premiums shall have been paid for two full years, the Company will, subject to the other conditions of this Policy, grant the following option:

"Indebtedness: Any indebtedness existing against this Policy at date of default will cause a reduction of all values named in the above Table; the Cash Value will be reduced by the indebtedness; the Paid-Up Life Insurance will be reduced an amount equal to the total indebtedness multiplied by a factor obtained by dividing the amount of the total Paid-Up Life Insurance by the total Cash Value; the Extended Insurance will not be reduced in amount, but the duration of extension will be reduced based upon the amount available as a cash value, after deducting indebtedness, used as a single premium for the purchase of term insurance in accordance with the Mortality Table and interest rate used in the valuation of this Policy.

"Contract: This Policy and the application therefor, copy of which is attached hereto, constitute the entire contract between the parties hereto.

"Indebtedness: Any indebtedness to the Company, including loans and interest accumulation, and any balance of the current

Policy year's premium remaining unpaid, will be deducted in any settlement of this policy or any benefit thereunder.

"Premiums: The first year's premium only may be paid to the agent. All subsequent premiums are due and payable in advance on or before the date due, at the Home Office of the Company without notice. However, such subsequent premiums may be paid to an authorized agent of the Company on or before the date when due, but only in exchange for an official receipt signed by the President or Secretary, and countersigned by said agent. The premium is always considered as payable annually, in advance, but by agreement in writing and not otherwise may be made payable in semi-annual or quarterly payments. The payment of a premium shall not maintain the Policy in force beyond the date when the next payment is due, except as herein provided. Upon failure to pay a premium on or before the date when due, or any note or other obligation given therefor, this Policy shall thereupon cease without any action or notice by the Company, and all rights shall be forfeited to the Company, except as herein provided. Notice of each and every premium due and to become due hereon is given and accepted by the delivery and acceptance of this Policy. Notice of premiums becoming due is sent to the Insured as a matter of accommodation, but the Company assumes no responsibility for the failure to send or the miscarriage or non-delivery of any notice."

The policy contains two tables of guaranteed loan and surrender values, but it is agreed that the figures contained in the following table are correct:

for creating indebtedness against the policy in a certain way, that is, as above set out, reference thereafter made in the policy to "any indebtedness existing against the policy at date of default," etc., meant such indebtedness as was placed against the policy in the way provided for and no other.

■ If we are correct in the above holding, then the premium note could not properly be charged against the reserve of this policy, for there is no provision in the policy nor in the note that in any way could be construed as taking an assignment of the reserve in the policy for the purpose of securing such note. We are supported in this view by Mr. Cooley in his Brief of the Law of Insurance, volume 6 of Supplement, page 381, wherein this rule is laid down: "The payment of a premium in cash may be waived by the proper officer of an insurance company and a note or other obligation accepted. In such case, the provision for interest in the note supplies consideration for the delay in the payment of the premium. The note, however, is a separate and independent transaction and has no relation to the contract of insurance except as stipulated in the policy."

■ The policy provides, as well as subdivision 1 of article 4732 of R. C. S. 1925, that all premiums of policies of insurance of this nature shall be payable in advance, and in subdivision 3 it is provided that the policy and application therefor shall constitute the contract between the parties. It seems clear that the language here used is too clear to admit of any other construction, but that the Legislature meant just what it said when it enacted subdivision 1 of the above article,

| After Premiums For | Cash Accumulated Coupons End Year | Cash or Loan Value For | Paid-Up Life Insurance For | Extended Insurance of $1,000.00 For |
|---|---|---|---|---|
| 2 Years | $3.67 | $19.67 | 54 | 2 Years 140 Days |
| 3 Years | 8.37 | 40.37 | 112 | 5 Years 11 Days |

In the paragraph of this policy entitled "Loans" the method by which indebtedness may be created against this policy is very plainly set out, and there can be little doubt that it was contemplated that before the insured could borrow from the reserve in this policy it would be necessary for the insured to execute a proper loan agreement and the company would take an assignment of the reserve in the policy to secure such loan and would indorse upon the policy such assignment and return the policy to the insured.

■ We have reached the conclusion that, when the provisions of this policy provided

and therefore, when the company accepted a note for the premium instead of cash, it was nevertheless a payment of the premium for that year, and, under subdivision 3, a premium note could in no way alter the rights of the parties under the provisions of the original policy agreement unless such policy at the time it was issued so provided, and, in the absence of a provision in the policy of insurance here sued upon securing the premium note with the reserve in the policy, we are of the opinion that the appellant would be unauthorized to use the reserve for that purpose.

The judgment of the trial court is affirmed.