THE PENN MUTUAL LIFE INSURANCE COMPANY OF PHILADELPHIA, a Foreign Corporation, v. RITA BELLE BOBBITT, a widow.

188 So. 843.
Opinion Filed May 16, 1939.
Rehearing Denied June 1, 1939.

*Kelly & Casler,* for Plaintiff in Error;

*Thomas Hamilton & Sheldon A. Lindsey,* for Defendant in Error.

BUFORD, J.—The writ of error brings for review judgment in favor of the plaintiff.

The record shows that the policy was issued to Aubrey M. Bobbitt on the 9th day of September, 1930, in the sum of $5,000.00.

The amended declaration filed September 29th, 1936, alleged:

"On the ninth day of September, A. D. 1930, in consideration of the payment by Aubrey M. Bobbitt of the sum of $59.05 and of the like sum on the ninth day of December, March, June and September in each year thereafter during the continuance of the policy of insurance, the defendant made and delivered to Aubrey M. Bobbitt, in the sum of $5,000.00, said policy made payable to Rita Belle Bobbitt, wife of the said Aubrey M. Bobbitt; that the said Aubrey M. Bobbitt duly fulfilled all the conditions of said insurance on his part, including the payment of premiums as aforesaid. On the fourth day of May, A. D. 1934, Aubrey M. Bobbitt died at Clearwater, Florida, leaving as beneficiary of the above described policy his wife, Rita Belle Bobbitt, the plaintiff herein; that upon the death of Aubrey M. Bobbitt, as aforesaid, there became due and payable under the terms of the said policy of insurance from the said defendant the sum of $5,000.00 to be paid

as provided in said policy; together with a reasonable sum as fees and compensation for the plaintiff's attorney in prosecuting this suit, all of which will more fully appear by copy of said policy of insurance, which is attached to the Bill of Complaint, heretofore filed in this cause and made a part of this amended declaration.

"But this plaintiff has not been paid the said sum, or sums of money, or any part thereof, by the said defendant, wherefore, she brings this her suit and claims the sum of $10.000.00 damages."

The amended third plea was as follows:

"That on or about the 9th day of September, 1930, it made and delivered its policy of insurance on the life of Aubrey M. Bobbitt, and that by the terms of said policy the defendant agreed to pay to the beneficiary designated in said policy in event of the death of the said Aubrey M. Bobbitt, the sum of $5,000.00, only upon the condition that the premiums thereon were duly paid on or before the respective dates when due, and that insured perform all the other conditions required in said policy to be performed by him; and that said sum was to be paid at the home office in the City of Philadelphia, or to its agent; and defendant avers that said contract was made in consideration of the written application of the insured which was made a part thereof, and in further consideration of the sum of $59.05, to be paid in advance, the payment of a like sum on the 9th day of December, 1930, and the payment of a like sum on the 9th day of March, June, September and December in every year thereafter, during the continuance of said policy, and for no other consideration, as will more fully appear by copies of said policy of insurance attached to the Bill of Complaint, in chancery action No. 17,591, and by reference thereto made a part hereof, the same as if incorporated herein. The defendant says that before the

lapse of said policy hereinafter alleged on, to-wit: the 7th day of March, 1933, the said Aubrey M. Babbitt obtained from said defendant loans on said policy in the amount of $203.16, which said amount was determined in the following manner; the said insured borrowed from defendant, on the 30th day of April, 1932, sufficient funds to pay the premiums due on said policy in December, 1931, and March, 1932, which amount was $118.10, less $18.48 dividend accruals, or a total of $99.62, as represented by a Certificate of Outstanding Lien, duly signed by insured, a true copy of same being attached to Pleas to Declaration filed by the defendant in this cause, and by reference thereto made a part hereof, the same as if incorporated herein; the quarterly premium of $59.05 due June 9th, 1932, was paid by a loan of said amount to plaintiff by this defendant, pursuant to a request for lien note settlement, duly signed by insured, a true copy of said request being attached to Pleas to Declaration filed by the defendant in this cause, being marked Defendant's Exhibit 'B,' and by reference thereto made a part hereof, the same as if incorporated herein; the quarterly premium due September 9th, 1932, of $59.05 was paid by a loan of said amount to plaintiff by this defendant, pursuant to a request for lien note settlement, duly signed by insured, a true copy of said request being attached to Pleas to Declaration filed by the defendant in this cause, being marked Defendant's Exhibit 'C' and by reference thereto made a part hereof, the same as if incorporated herein; subtracted from the last two notes were dividend accruals of $9.24 and $9.82 respectively, and interest of $5.50 added, making a total of $203.16 which amount was never repaid to defendant. Defendant further says that the premium payment of $59.05 due on December 9th, 1932, was never paid, either by loan or otherwise, nor was any payment made to

defendant, by loan or otherwise, on account of the premiums accruing on said policy subsequent to the loan for the premium due September 9, 1932. The defendant avers that it was provided by the terms of said policy that, in case of default in the payment of premium after two years premium had been paid in full, the insurer would, subject to existing indebtedness, extend automatically the face amount of policy as Term Insurance, without participation, for such period as provided by the table included in, and made a part of, said policy; or purchase paid up participating life insurance under proper written application within one month from date of lapse; or pay the cash value of the policy upon proper release and delivery of this policy within one month from the date of lapse, and it was further provided that, if at the time of default in the payment of any premium there should be any indebtedness on account of the policy, then the said options of settlement should be correspondingly reduced; and defendant says that at the time of said default in the payment of premiums there was an indebtedness on account thereof in the amount hereinbefore stated, whereby the term of extended insurance was reduced to the period hereinafter mentioned. Defendant further avers that on March 7th, 1933, it sent a notice of lapse to said insured; that said insured did not demand the cash value of the policy, or paid up participating life insurance, but elected to take advantage of the provision thereof to have the same automatically extended for the period therein provided, which, in the event there had been no indebtedness against the policy, would have been for such period as provided by the table included in and made a part of, said policy, * * * but defendant says that the option of settlement by way of extended insurance for such period was applicable only in case there was no indebtedness against the policy, it being

(31c) * * * which said term would have been for a term of three (3) years, 152 days, from December 9, 1932, expressly provided in said policy that '—the extended insurance shall be for the face amount of this policy, less any indebtedness and for such a term as such increased or diminished cash value will provide,' and that at the time of the lapse of said policy there was an indebtedness on account thereof amounting to $203.16, plus interest in the amount of $3.05, or a total of $206.21 for loans and interest thereon from the defendant to the insured, that upon lapse of the policy for failure to pay the said December, 1932, quarterly premium there remained, on account of the aforesaid indebtedness, the sum of $58.20 to the credit of the said policy to purchase extended insurance, the said $58.20 cash value being determined upon a basis that two and one quarter years premiums had been paid, as hereinbefore alleged, which gave the said policy a cash surrender value of $234.95, to which was added $29.46 in cash dividends, or a total cash value of $264.41, less the indebtedness of $206.21; the said method of computation being outlined in the following paragraph of Section 3 of the said policy:

" 'The stated cash value will be increased by any individual credits and by full reserve on any paid up insurance purchased by dividends and diminished by any existing indebtedness.'

"By reason of the aforesaid and of the terms of said policy providing for reduction in the value of said option of settlement, the period of extended insurance was reduced accordingly, and term insurance, without participation, was granted, to insured in the amount of $5,000.00, less the amount of indebtedness as aforesaid, or $4,794.00 (using the even dollars) which said amount of insurance was extended for the period of time which the said $58.20

would buy insurance for a man 52¼ years of age (the age of the insured at the time of lapse), or for a term of 293 days, which extended the said insurance for a period ending September 28th, 1933. Defendant says that by reason of the foregoing facts said policy had entirely lapsed and become void long prior to the death of the insured, on May 4th, 1934, and plaintiff is not entitled to recover thereon."

The case was tried on the issues presented by the pleadings, *supra*.

The insurance policy, in Sections 2 and 3 thereof, contains the following provisions:

### "SECTION 2. POLICY LOANS

"Loans will be available during the second policy year, if two years' premiums have been paid, and at any time thereafter while there is no default in payment of premiums, and may be obtained on proper assignment and delivery of this Policy and on the sole security hereof.

"The amount of such loan may be any sum which with interest to the end of the current policy-year will not exceed the cash value at the end of such year as defined in Section 3, less any existing indebtedness on this Policy and any unpaid balance of the current policy-year's premium.

"The indebtedness or any part thereof, may be repaid to the Company at any time.

"Interest on loans will be at the rate of 6 per cent per annum, payable at the end of each policy-year. If not paid when due it shall be added to the existing indebtedness provided the total indebtedness on the Policy would not then exceed the total cash value, and the indebtedness thus created shall bear interest at the same rate.

"Failure to repay any such loans or interest thereon shall

not void this Policy unless the total indebtedness hereon with interest shall equal or exceed the total cash value, nor until one month after notice shall have been mailed to the last known address of the insured and of assignee, if any, of record at the Home Office of the Company. The indebtedness on account of this Policy, with accrued interest, shall be deducted from any settlement hereunder. The Company shall have the right to defer the making of a loan hereon (unless for the purpose of paying premiums on policies in this Company) for a period of not exceeding ninety (90) days from the date of the application therefor.

"SECTION 3. LAPSE—NON-FORFEITURE—POLICY VALUES

"Upon non-payment of any premium when due or within the period of grace, this Policy shall lapse and become null and void but if premiums have theretofore been paid for two full years or more a value will be available which will be the full reserve on this Policy less a surrender charge not greater than 1% of the face amount of this policy. After the payment of premiums for three years or more such value will be the full reserve on this Policy. The reserve basis of the Policy values is the American Experience Table of Mortality with interest at 3 per cent per annum, according to the net level premium method.

"This value may be used as follows:

"(1)  To extend automatically the face amount of this Policy as Term Insurance without participation. If this value is more than sufficient to extend the insurance for the lifetime of the insured, such value will be applied to purchase paid-up participating life insurance; or

"(2)  To purchase paid-up participating life insurance upon proper written application within one month from the date of lapse; or

"(3)  To pay the cash value of this Policy upon proper release and delivery of this Policy within one month from the date of lapse.

"The following table states such values for completed policy years.  These values will be correspondingly increased for any fractional part of a year's premium which has been paid.  The full reserve on any paid-up insurance or extended insurance, less any indebtedness thereon, will be available as a cash value at any time upon proper release and delivery of this Policy.

"The stated cash value will be increased by any dividend credits and by the full reserve on any paid-up insurance purchased by dividends and diminished by any existing indebtedness; the amount of paid-up insurance shall be increased or diminished in the same proportion as such cash value is increased or diminished; or the extended insurance shall be for the face amount of this Policy less any indebtedness, and for such a term as such increased or diminished cash value will provide.

"The Company shall have the right to defer the payment of a surrender value of this Policy (unless for the purpose of paying premiums on policies in this Company) for a period of not exceeding ninety (90) days from the date of the application therefor."

The pertinent provisions involved in this case are:

"Loans will be available during the second policy-year, if two years' premiums have been paid, and at any time thereafter while there is no default in payment of premiums, and may be obtained on proper assignment and delivery of this Policy and on the sole security hereof."

"Failure to repay any such loans or interest thereon shall not void this policy unless the total indebtedness

hereon with interest shall equal or exceed the total cash value, nor until one month after notice shall have been mailed to the last known address of the insured and of assignee, if any, of record at the Home Office of the Company. The indebtedness on account of this Policy, with accrued interest, shall be deducted from any settlement hereunder. The Company shall have the right to defer the making of a loan hereon (unless for the purpose of paying premiums on policies in this Company) for a period of not exceeding ninety (90) days from the date of the application therefor."

"The stated cash value will be increased by any dividend credits and by the full reserve on any paid-up insurance purchased by dividends and diminished by any existing indebtedness; the amount of paid-up insurance shall be increased or diminished in the same proportion as such cash value is increased or diminished; or the extended insurance shall be for the face amount of this Policy less any indebtedness, and for such a term as such increased or diminished cash value will provide."

On April 30, 1932, the insured executed a certificate of lien, as follows:

"CERTIFICATE OF OUTSTANDING LIEN

"99.62:

"I hereby acknowledge that THE PENN MUTUAL LIFE INSURANCE COMPANY has advanced the sum of Ninety-nine and 62/100 Dollars to be applied on account of premium on policy No. 1544489 on the life of AUBREY M. BOBBITT, which sum together with interest at the rate of six per cent per annum and any additional advance or ac-

848

crued interest as stated on the premium receipts and endorsed hereon, shall be a lien on said policy, bearing interest at the rate of six per cent per annum, payable annually on the ninth day of September until the total amount under such lien, with interest as above, is extinguished by the surplus apportioned to the policy or is otherwise paid the Company.

"The undersigned agrees that all of said indebtedness, including any accrued interest, shall be deducted by Company in making payment of any sums which may be payable under said policy.

"If the policy shall lapse through non-payment of premium after two years' premiums have been paid, then the total indebtedness under this certificate, together with any other indebtedness to the Company on account of said Policy, shall be deducted from its cash value; the amount of paid-up insurance shall be reduced in the same proportion as the cash value is reduced; and where the policy provides for automatic extended insurance the amount so extended shall be the face value of the policy, less the total indebtedness, and for such a term as said reduced cash value shall provide.

"If at any time the entire indebtedness evidenced by this certificate, together with any other indebtedness to the Company on said Policy, shall equal or exceed its loan value, the Company's liability under said Policy shall terminate upon compliance by the Company with the requirements of the Policy, if any, respecting notice.

" Apr. 30th, 1932.

"Audrey M. Bobbitt
"Aubrey M. Bobbitt"

On July 29, 1932, the insured executed and transmitted to the insurer a request for lien note settlement as follows:

"(REQUEST FOR LIEN NOTE SETTLEMENT)

"THE PENN MUTUAL LIFE INSURANCE COMPANY
Philadelphia, July 29, '32

"It is hereby requested that the 1⁄4 6-9-32 premium due on Policy No. 1,544,489 on the life of AUBREY M. BOBBITT, in THE PENN MUTUAL LIFE INSURANCE COMPANY, be settled by premium lien, in so far as the value of Policy No. 1, 544, 489, will permit, and that said Company furnish, through its General Agent Louis F. Savarese, the premium lien note, if necessary, to be executed when presented by the General Agent, to accomplish such settlement.

"This request shall be inoperative unless enough cash to pay the above mentioned premium, when added to the value of the Policy, accompanies this request or is paid within the grace period (or unless the value is sufficient to pay the entire premium).

"No Agent may vary this requirement as to cash payment.

"Aubrey M. Bobbitt
"(To be dated and signed in ink)"

And he also executed and transmitted to the insurer a like instrument on October 13th, 1932, as follows:

"(REQUEST FOR LIEN NOTE SETTLEMENT)

"THE PENN MUTUAL LIFE INSURANCE COMPANY
Philadelphia, July 29, '32

"It is hereby requested that the 1⁄4 9-9-32 premium, due on Policy No. 1,544,489 on the life of AUBREY M. BOBBITT, in THE PENN MUTUAL LIFE INSURANCE COMPANY be settled by premium lien, insofar as the value of Policy

No. 1,544,489 will permit, and that said Company furnish, through its General Agent Louis F. Savarese, the premium lien note, if necessary, to be executed when presented by the General Agent to accomplish such settlement.

"This request shall be inoperative unless enough cash to pay the above mentioned premium when added to the value of the Policy, accompanies this request or is paid within the grace period (or unless the value is sufficient to pay the entire premium).

"No agent may vary this requirement as to cash payment.

"A. M. Bobbitt

"(To be dated and signed in ink.)"

The certificate of outstanding lien has endorsed on the back thereof the following:

"No. 1,544,489

"CURRENT INTEREST

| "Year | Lien | Added | Surplus | Balance of Lien | |
|---|---|---|---|---|---|
| 1931 | $59.05 | $____ | $9.54 | $ 49.81 | |
| 1932 | 59.05 | ____ | 9.24 | 99.62 | |
| 32 | 59.05 | ____ | 9.24 | 149.43 | |
| 32 | 59.05 | 4.50 | 9.82 | 203.16 | 9099 L" |

(Deft's Ex. No. 2)

The transcript of the evidence couples these endorsements with the loans shown to have been made and referred to in the Certificate of Lien, *supra*.

The paragraph of the Certificate of Lien reading as follows: "If the policy shall lapse, through non-payment of premium after two years' premiums have been paid, then the total indebtedness under this certificate, together with any other indebtedness to the Company, on account of

said Policy, shall be deducted from its cash value; the amount of paid-up insurance shall be reduced in the same proportion as the cash value is reduced; and where the policy provides for automatic extended insurance the amount so extended shall be the face value of the policy, less the total indebtedness and for such a term as said reduced cash value shall provide," is in harmony with the like provisions of the Policy, *supra.*

It appears that the defendant in error contends that the transaction between the parties was within the purview of the last paragraph of Section 4 of the Policy which section controls change of beneficiary and assignment of policy, and that as there was no assignment of the policy in accordance with the provision of Sec. 2, *supra,* and as under the terms of the policy, *supra,* in regard to assignment of the policy, there was no lien created whereby the insurer could apply the provisions of unnumbered paragraph 5 of Sec. 3, *supra,* in the determination of the term for which extended insurance would be available and the amount of such extended insurance.

The contention, however, is not available to the beneficiary because the conditions of the policy were modified by the certificate of lien, a subsequent contract executed by the insured and accepted and acted upon by the insurer involving the same subject matter, whereby the insured in terms of a written instrument stipulated and agreed:

"9962

"I hereby acknowledge that The Penn Mutual Life Insurance Company has advanced the sum of Ninety-nine and 62/100 dollars to be applied on Account of premium on policy No. 1,544,489 on the life of Aubrey M. Bobbitt which sum, together with interest at the rate of six per cent per annum and any additional advance or accrued in-

terest as stated on the premium receipts and endorsed hereon, shall be a lien on said policy, bearing interest at the rate of six per cent per annum, payable annually on the ninth day of September until the total amount under such lien, with' interest as above, is extinguished by the surplus apportioned to the policy or is otherwise paid the Company."

The allegations of the amended Third Plea were proved by uncontradicted evidence and the contracts between the insured and the insurer warranted the interposition of the allegations of the plea as an affirmative defense to the action.

The insured and the insurer were *sui juris* and the beneficiary was bound by their contracts as they stood as of the date of the death of the insured.

There are no complicated or novel questions of law involved.

There is no ambiguity in the contracts.

Because of the terms of the contracts (the policy and the lien certificate), the authorities relied upon by the appellee in such cases as Underwood v. Jefferson Standard Life Ins. Co., 177 N. C. 327, 98 S. E. 832; Amicable Life Ins. Co. v. White (Tex. Civ. App. Apr. 1931), 38 S. W. (2nd) 860, and Waddell v. New England Mutual Life Ins. Co., 83 Ind. App. 209, 147 N. E. 816 are not applicable here.

The case of Alexander v. Northwestern Mutual Life Ins. Co., Mo. App. (Jan. 1927), 290 S. W. 452, is directly in point and supports our conclusion.

The opinions and judgments in the cases of Neal v. Columbia Mutual Life Ins. Society, 161 Miss. 814, 138 Sou. 353; Pavy v. Franklin Life Ins. Co. of Illinois, 125 La. 262, 51 Sou. 191, in logic and reason also support our view.

For the reasons stated, the judgment is reversed.

So ordered.

TERRELL, C. J., and WHITFIELD, and BROWN, J. J., concur.

CHAPMAN and THOMAS, J. J., agree to conclusion.